Scott, J.
The judgment which is now sought to be re *262 versed was recovered by Barrett, the defendant in error, in the district court of Huron county.
The original action was commenced by Barrett, in the court of common pleas, against Frederick King, Isaac Scragenheim and Job King, the plaintiff in error, as the makers of two promissory notes, of which Barrett claimed to be the holder, in virtue of the indorsement of the payee.
No defense was made except by Job King, who averred in his answer, among other things, that he signed the notes in suit, as guarantor or surety only for the two other defendants, and that Barrett received the notes with full knowledge of this fact, and that Barrett subsequently, at two different times, made agreements with one of the principal debtors, extending the times of payment, for a valuable consideration paid him.
Barrett, in reply, traversed this matter of defense.
The issues were tried by a jury, and resulted in a verdict and judgment in favor of Barrett.
From a bill of exceptions taken on the trial, it appears that Job King, holding the affirmative of the issues on trial, offered evidence tending to show that he signed the notes in suit, as surety for the other defendants, and that this fact was known to Barrett at and before the time when the notes were indorsed to him. And further to maintain the issue on his part, called as a witness George H. Safford, and asked him what he had heard Barrett say about his (Barrett’s) having made a bargain with Scragenheim (to which agreement Job King was not a party), to extend the time for the payment of the said notes, and for what consideration. To this question the witness answered, that “ what was said by plaintiff was said to him as an attorney, and he was unwilling to state the conversation,” but said that the plaintiff had never retained him, or paid him anything in regard to it. The plaintiff- objected to the witness answering, and the court -sustained the objection. After the defendant had closed his testimony, the plaintiff offered himself as a witness, and testified generally in the Case. And upon cross-examination, the defendant asked the plaintiff if he had not at any time stated to said *263 Safford that he had made an agreement with Scr'agenheim alone, to extend the time' of the payment of those notes. To which plaintiff’s counsel objected, and the court sustained the objection. Defendant then asked him if he had not done so in Safford’s office, in Norwalk, in the month of June, 1854, and also, if he had not done so in the month of July or August. To which questions the plaintiff objected, claiming the plaintiff was not compelled to disclose what he had said to his attorney; and the court sustained the objection. After the plaintiff had closed his testimony, the defendant again called Safford as a witness, and asked him if he had heard the plaintiff say in a conversation with him, at witnesses’ office, in Nonvalk, in June, 1854, that he (Barrett) had made an agreement with Scragenheim, by which, for a consideration, he had agreed to extend the time for the payment of said notes. To which question the plaintiff objected, and the court sustained the objection.
To all these rulings of the court exception was taken by the defendant. And the defendant, after verdict, having moved the court to set the same aside, on account of alleged error in the rulings aforesaid, as well as in the charge of the court to the jury, this motion was overruled, and the defendant excepted.
Among other questions now presented, the correctness of these rulings is drawn in question.
On grounds of public policy, communications made by a party to an attorney for the purpose of obtaining his professional advice or assistance, are, by the rule of the common law, in general privileged. Courts arill neither require nor permit such communications to be divulged, to the prejudice of the client, and without his consent. This, however, is the privilege of the client, and not of the attorney, and it may, of course, be waived by the client. In order to protect such communications, no formal retainer, or actual payment of fees is necessary. 1 Greenleaf’s Ev. sec. 237, et seq.; Foster v. Hall, 12 Pick. 89.
Our code of civil procedure has materially changed the rule of the common law, as- to the competency of witnesses. It *264 declares in the 310th section, that “ no person shall be disqualified as a witness in any civil action or proceeding, by reason of his interest in the event of the same, as a party or otherwise.” And while in the 314th section the common law rule is affirmed, that an attorney shall be incompetent to testify “ concerning any communication made to him by his client, in that relation, or his advice thereon, without the client’s consent,” the 315th section provides that “ if a person offer himself as a witness, that is to be deemed a consent to the examination also of an attorney ... on the same subject.” In the case before us, Barrett, being a party, voluntarily offered himself as a witness generally, in his own behalf. In so doing, he waived all the protection which the law would otherwise have afforded to communications made by him to his attorney, pertinent to the issue on trial. Those communications were no longer privileged, and having made himself a witness, and given evidence generally in the case, he was bound,, upon proper inquiry, to tell the whole truth, and his testimony became liable to the application of all the usual tests of truth, and to impeachment, like that of any other witness, and for this purpose his attorney might be called to prove statements and admissions which his client, as a witness, denied. Indeed, we are satisfied that his attorney might then be called to prove such admissions, as evidence in chief.
The plaintiff in error proposed to examine the attorney as soon as the opposite party had, by offering himself as a witness, withdrawn his objection. It was through no fault of the plaintiff in error that the attorney had not been examined at an earlier stage of the trial. A different rule would give an unfair advantage to the party holding the negative of the issue. Eor where each of the parties offer themselves as witnesses, professional communications on the one side would be privileged, and on the other not. Such is not the spirit of the code. It clearly aims to give each party an equal standing in court, in respect to evidence. Section 313 fully illustrates this spirit, by prohibiting a party from testifying under circumstances which would give him an undue advantage.
*265 The statement of Mr. Safford does not very clearly show that the communication, claimed to be privileged, was made to him as the attorney of the party making it, for the purpose of obtaining his professional aid. But assuming this to be the fact, we think the district court clearly erred in overruling the proposed cross-examination of the defendant in error, as well as in overruling the proposed subsequent examination of the attorney; and therefore, without examining the further errors assigned, the judgment of the district court is reversed, and the cause remanded.
Brinkerhoff, C.J., and Sutliff, Peck, and Gholson, JJ,, concurred.